UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AMTRANS HEALTH, LLC, and SAGAR FOSSIL FUEL TECHNOLOGIES PVT. LTD.,
Plaintiffs,

v. C.A. 08-0044ML

Z-MEDICA CORPORATION,
Defendant.

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion to dismiss filed by Defendant, Z-Medica Corporation. Plaintiffs, AmTrans Health, LLC, ("AmTrans") and Sagar Fossil Fuel Technologies Pvt. Ltd. ("Sagar"), filed a nine count complaint in Rhode Island Superior Court on January 18, 2008. On February 6, 2008, Defendant removed to this Court on diversity grounds. Defendant subsequently moved to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiffs object. In addition, Plaintiffs moved for jurisdictional discovery on the issue of personal jurisdiction. Plaintiffs' motion was denied by Magistrate Judge Martin and Plaintiffs appealed this denial. For the reasons set forth below, Defendant's motion to dismiss is GRANTED, and Plaintiffs' appeal of the denial of their motion for jurisdictional discovery is DENIED.

I. Background

It is well established that the burden rests with the plaintiff to make at least a prima facie showing to withstand a challenge to personal jurisdiction. Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997). "In conducting the requisite

analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). "It has long been the rule of this circuit, however, that plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). The "plaintiff must go beyond the pleadings and make affirmative proof." Chlebda v. H.E. Fortna & Bro. Inc., 609 F.2d 1022, 1024 (1st Cir. 1979). "We then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law at Andover, Inc., 142 F.3d at 34.

Defendant is a Connecticut corporation, which has its principal place of business in Wallingford, Connecticut. (Compl. ¶ 3.) Defendant is engaged in the production and marketing of medical products, including QuikClot brand hemostatic agents and other blood clotting medical products ("products"). (Id. ¶ 6.) Defendant does not maintain a place of business, office, or facility in Rhode Island. (Huey Aff. ¶ 5.) It has no address, telephone number, or bank accounts in Rhode Island. (Id.) Defendant does not have an agent for service of process in Rhode Island. (Id.)

Plaintiff AmTrans is a company organized under the laws of the State of Rhode Island with its principal place of business in Wickford, Rhode Island. (Compl. ¶ 1.) Plaintiff Sagar is a company organized and existing under the laws of India with its principal place of business in New Delhi, India. (Id. ¶ 2.)

In 2002, Defendant authorized Sagar to represent, promote, and distribute the products throughout India. (Id. ¶ 7.) In July 2003 and September 2005, Defendant

reaffirmed Sagar's appointment as its exclusive sales representative in India. (Id. ¶¶ 10, 12.) In about February 2006, Plaintiffs AmTrans and Sagar, executed an Exclusive Marketing and Fulfillment Agreement. (Id. ¶ 15.) In accordance with this agreement, Plaintiffs have worked since February 2006 in conjunction to market, promote and secure orders for Defendant's products. (Id.) On behalf of Defendant, AmTrans served as intermediary to Sagar: AmTrans coordinated the use and delivery of Defendant's marketing materials to Sagar, picked up and stored Z-Medica's products in Rhode Island, shipped Defendant's products from Rhode Island to India, and coordinated the filing of documents by Defendant for authority to sell its products in India. (Roberts Aff. ¶ 6.) In the process, AmTrans and Defendant exchanged 156 e-mails, 8 letters or invoices, and 41 telephone calls. (Id. ¶ 7.)

Plaintiffs allege that Defendant breached its exclusive agreement with Sagar by using agents from India, United Kingdom, and Mexico to sell the products in India. (Compl. ¶¶ 21- 23, 34-36.) Plaintiffs further allege that Defendant failed to provide them with the proper support and appropriate goods to facilitate marketing of the products. (Id. ¶¶ 26, 28, 30, 33.) As the alleged third party beneficiary of Defendant's agreement with Sagar, AmTrans claims that it has also been injured by the alleged breach. (Id. ¶¶ 47, 48.)

In September 2005, Defendant made one direct shipment to Rhode Island and at various points in 2007, Defendant made four shipments via non-Rhode Island distributors to Rhode Island. (Huey Aff. ¶¶ 10, 11, 12.) The total price of the direct shipment in 2005 was $642.50, which is less than 0.1% of Defendant's sales. (Id. ¶ 11.) The four

shipments through non-Rhode Island distributors had a total price of $637.92, which is less than 0.1 % of Defendant's sales. (Id. ¶ 12.)

On August 26, 2006, Jeffrey Horn, a representative of Defendant, attended the Trauma Surgeons Conference and Exhibition (the "medical conference") in Newport, Rhode Island, and discussed business with an AmTrans representative.[1] (Id. ¶ 13.)

## II. Personal Jurisdiction

The defendant is subject to personal jurisdiction in this Court only if it has certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Whether sufficient minimum contacts exist depends on the quality and nature of the defendant's activity, but it is essential that there be some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking its benefits and protections. Harlow v. Children's Hosp., 432 F.3d 50, 58 (1st Cir. 2005). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . ." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1984).

In applying the minimum contacts analysis, courts recognize two types of jurisdiction - general and specific. United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but

[1] Plaintiffs also provide evidence that Defendant's products were advertised in publications that circulated in Rhode Island and that Defendant attended a trade show in Rhode Island. (Garry Aff. ¶ 4; Vernancio Aff., Apr. 25, 2008; Vernancio Aff., May 15, 2008.) These contacts occurred, however, after Plaintiffs filed their complaint in January, 2008. (See id.) Contacts made after the filing of the complaint are not considered in the analysis of personal jurisdiction. See Harlow v. Children's Hosp., 432 F.3d 50, 61, 64-65 (1st Cir. 2005); Noonan v. Winston, 135 F.3d 85, 93 n.8 (1st Cir. 1998).

the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Id. Specific jurisdiction, on the other hand, exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Id. at 1088-89. However, for either type of jurisdiction, in addition to the existence of sufficient minimum contacts, the defendant's contacts with the state must be purposeful and the exercise of jurisdiction must be reasonable under the circumstances. See Harlow, 432 F.3d at 57.

A. Specific Jurisdiction

In the analysis of specific jurisdiction, the court applies two general rules. First, the forum in which the federal district court sits must have a long-arm statute that enables the court to exercise jurisdiction over a non-resident defendant. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). Second, the plaintiff must show sufficient minimum contacts such that "the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). "Because Rhode Island's long-arm statute has been held to extend to the constitutional limits of the Fourteenth Amendment, a federal court sitting in Rhode Island may proceed directly to the due process analysis." North Am. Catholic Educ. Programming Foundation Inc. v. Cardinale, 536 F.Supp.2d 181, 186 (D.R.I. 2008) (internal citation omitted); Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990). Thus, this Court need only decide whether the assertion of personal jurisdiction over the Defendant comports with due process principles. See Cardinale, 536 F.Supp.2d at 186. The First Circuit has developed a three-prong test for analyzing the due process considerations for the existence of specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec., 960 F.2d at 1089. In order for a court to exercise specific personal jurisdiction, all three factors - relatedness, purposefulness and reasonableness - must be satisfied. See id. The Court notes that three of Plaintiffs' claims are for breach of contract, three allege equitable claims of quantum meruit, promissory estoppel, and a claim for an accounting, one tort claim for intentional interference with prospective contractual relations, one fraud claim, and a claim for declaratory judgment. All of these claims, however, arise from the relationship of the parties to each other.

1. Relatedness

To satisfy the relatedness requirement, the plaintiff is required to show that his cause of action arose from more than a mere general relationship between the parties. See Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). Instead, the plaintiff must show that the action directly arises out of the specific contacts between the defendant and the forum state. Id. Plaintiffs have not shown that Defendant's alleged breach of contract with Sagar arises out of contacts with Rhode Island. Indeed, the alleged contract and breach could hardly be more removed from any connection to Rhode Island. The alleged agreement involved an exclusive appointment to Sagar (an Indian company) to distribute Defendant's products in India. Plaintiffs claim that Defendant breached this contract by using other agents to sell its products in India. AmTrans, however, enters the picture only as an alleged third party beneficiary to the contract between Defendant and Sagar. The alleged breach, however, is completely unrelated to AmTrans' location in

Rhode Island. AmTrans, after all, had a contract with Sagar to market, promote, and sell Defendant's products in India, not in Rhode Island.

Plaintiffs have also failed to show that any of their other claims are related to the contacts they enumerate. The conduct on which Plaintiffs base their claims involved Defendant's actions in India, the United Kingdom, and Mexico, not in Rhode Island. It was Defendant's alleged use of agents from the aforementioned countries and failure to provide proper support and proper goods that caused Plaintiffs' alleged injuries, not Defendant's contacts with Rhode Island. Plaintiffs have not provided the Court with prima facie evidence sufficient to demonstrate that a cause of action arises out of the Defendant's contacts with Rhode Island. See id.

Having failed to satisfy the relatedness prong, this Court is not required to continue its jurisdictional analysis. See Hainey v. World AM Commc'ns, Inc., 263 F.Supp.2d 338, 342 (D.R.I. 2003). However, the Court will briefly discuss the remaining two prongs of the specific jurisdiction analysis, since they also militate against the exercise of personal jurisdiction.

2. Purposeful Availment

The second prong of the due process test considers whether a defendant has '"engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable."' Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)). To demonstrate purposeful availment, the plaintiff must proffer "evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship - say, by solicitation - the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." Phillips Exeter

Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999) (internal citation omitted). Two factors are considered in the purposeful availment analysis: voluntariness and foreseeability. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). The requirement depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in the forum state. See Jet Wine and Spirits, Inc. v. Bacardi & Co., 298 F.3d. 1, 11 (1st Cir. 2002).

Plaintiffs' evidence is insufficient to show purposeful availment because it merely shows communications and transactions necessary for facilitating the contract with Plaintiffs. See Philips Exeter, 196 F.3d at 292. Plaintiffs have not presented evidence that the 156 emails, 8 letters or invoices, and 41 documented telephone calls, related to business in Rhode Island. Although there is evidence that Defendant's products were shipped to and stored in Rhode Island, Plaintiffs have not shown that the products were shipped to and stored in Rhode Island by Defendant or at its instruction. AmTrans has not disputed that it either traveled to Connecticut to pick up the products, or Defendant shipped the products directly to India or to an Indian embassy in Washington, D.C. Further, there is no evidence that Defendant had any control over where its products were shipped once the products were picked up in Connecticut by the AmTrans representative. The mere existence of a supplier-distributor relationship, especially when the distributor is contracted to distribute to another continent, does not confer personal jurisdiction over the non-resident in the distributor's home. More is required. See Sawtelle, 70 F.3d at 1389.

Plaintiffs contend that this case is similar to Unicomp, Inc. v. Harcros Pigments, Inc., in which the district court found purposeful availment because distributors in the defendant's distribution network targeted the jurisdiction at issue. 994 F.Supp. 24, 32-33 (D. Me. 1998). However, the case at hand is distinguishable from Unicomp, since Plaintiffs were contracted by Defendant to distribute its products in India, not in Rhode Island. See id. Moreover, in Unicomp, the defendant directed seventeen shipments to the plaintiff in the forum state. Id. at 28. Here, in contrast, Defendant only sent one direct shipment and four shipments through non-Rhode Island distributors to Rhode Island, none of which were sent to AmTrans. See id.

A review of the totality of Defendant's contacts with Rhode Island shows that it did not purposefully avail itself of the benefits and protections of Rhode Island law. See Sawtelle, 70 F.3d at 1391.

3. Gestalt Factors

In the third prong of the test, the court determines whether the exercise of jurisdiction over the defendant is reasonable. United Elec., 960 F.2d at 1089. "The Gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." Id. at 1091 n.11. This is not a close case. Therefore, the Gestalt factors will not tip the balance into Plaintiffs' favor.

In conclusion, Plaintiffs have not set forth evidence of purposeful availment or that their claims arise out of or are related to Defendant's contacts with Rhode Island. See id. at 1089. Accordingly, this Court finds that it does not have specific jurisdiction.

B. General Jurisdiction

"It is well-established that the standard for finding general jurisdiction 'is considerably more stringent than that applied to specific jurisdiction questions.'" Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007). In order to find general jurisdiction, the court considers the defendant's contacts with a forum in aggregate to determine whether those contacts are continuous and systematic. See Harlow, 432 F.3d at 65. "The 'continuous and systematic' requirement has been characterized as being satisfied when the defendant's forum contacts are 'extensive and pervasive.'" Barry v. Mortgage Servicing Acquisition Corp., 909 F.Supp. 65, 75 (D.R.I. 1995). "[A] corporation's 'single or isolated items of activities in a state . . . are not enough to subject it to suit on causes of action unconnected with the activities there.'" Donatelli, 893 F.2d at 463 (quoting Int'l Shoe, 326 U.S. at 317.) In order to show general jurisdiction, the plaintiff must also show purposeful availment of the privileges and benefits of doing business in the forum state. See id. at 463-64.

In support of general jurisdiction, Plaintiffs point to: Defendant's travel to Rhode Island for the medical conference; Defendant's correspondence with AmTrans through the exchange of 156 emails, 8 letters or invoices, and 41 documented phone calls; and revenue Defendant generated from shipments to Rhode Island. Plaintiffs also contend that the work AmTrans performed in Rhode Island on Defendant's behalf such as shipping and redistribution should be considered contacts for the purpose of general jurisdiction. The totality of these contacts, according to Plaintiffs, show the "continuous

and systematic linkage" required for the exercise of general jurisdiction. See Phillips Exeter Acad., 196 F.3d at 288.

Defendant's contacts fall short of the defendant's contacts in Noonan v. Winston, in which the First Circuit found general jurisdiction did not apply. 135 F.3d 85, 92-94 (1st Cir. 1998). In Noonan, the defendant, CLB, a British publishing company, regularly solicited business from World Publications Inc. ("World"), a remainder house located in Dighton, Massachusetts. Id. at 92. Like Defendant, CLB visited Massachusetts, the forum state. See id. After a CLB employee traveled to Massachusetts and engaged in conduct that ultimately led to the plaintiff's injuries, CLB made at least two other visits to the forum state, with the intention of developing a business relationship with World. Id. at 92, 93. In the instant case, Defendant only made one visit to Rhode Island for a medical conference.[2] There is no indication that this visit was made with the intention of developing business relationships specifically in Rhode Island or that it involved conduct that led to Plaintiffs' injuries. CLB generated about $585,000 worth of revenue from the forum state. Id. at 93. In comparison, Defendant generated only $642.50 from one direct sale to Rhode Island, and $637.92 from a combination of sales made by independent distributors in Rhode Island. See id. Not only did these sales amount to less than 0.1% of its total sales, but they were also made three years apart,[3] making them infrequent and isolated. See Noonan, 135 F.3d at 93; Donatelli, 893 F.2d at 463. CLB regularly communicated with World by telephoning, faxing and writing to secure book orders from World. Noonan, 135 F.3d at 92. Defendant's communications with AmTrans included

[2] Plaintiffs provide evidence of Defendant's attendance at a trade show in Rhode Island in April, 2008. However, this visit was made after Plaintiffs filed their complaint in January, 2008, thus it will not be considered in the personal jurisdiction analysis. See Harlow, 432 F.3d at 64-65; Noonan, 85 F.3d at 93 n.8.

[3] The first direct sale was made in 2005, and the subsequent four sales were made by independent distributors at various times in 2007.

156 emails, 8 letters or invoices, and 41 documented phone calls. Defendant's communications, however, did not concern business in Rhode Island, but the distribution agreement in India. As discussed in the analysis of purposeful availment in specific jurisdiction, the work AmTrans conducted in Rhode Island on Defendant's behalf does not show purposeful availment because Defendant had no control over the products after AmTrans picked them up in Connecticut.

Because Defendant's contacts with Rhode Island are not purposeful or continuous, but isolated and infrequent, this Court does not have general jurisdiction over Defendant. See Donatelli, 893 F.2d at 463.

III. Jurisdictional Discovery

Plaintiffs object to Magistrate Judge Martin's order denying them jurisdictional discovery. Because this is a nondispositive matter, this Court considers the magistrate judge's ruling under the "clearly erroneous or contrary to law" standard of review. Fed. R. Civ. P. 72; Sunview Condominium Ass'n v. Flexel Intern., Ltd., 116 F.3d 962, 964 (1st Cir. 1997) (finding that a motion for jurisdictional discovery involves a nondispositive matter).

"[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable [claim] for the existence of *in personam* jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Sunview, 116 F.3d at 964. A plaintiff makes a colorable claim when he makes a convincing showing that there is specific and general jurisdiction. See United States. v. Swiss American Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001). In addition to making a

colorable claim, a plaintiff must "present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 626.

Plaintiffs argue that the magistrate judge's decision was clearly erroneous and contrary to law because: the discovery sought is specifically targeted to facts which support Defendant's contacts with Rhode Island, Defendant repeatedly corresponded with a Rhode Island company and visited Rhode Island, and finally Defendant authorized AmTrans, a Rhode Island company, to facilitate the sale of the products through Sagar in India.

Magistrate Judge Martin's findings, however, were not "contrary to law" because he applied the correct standard: whether Plaintiffs had made a "colorable claim" of personal jurisdiction. See Sunview, 116 F.3d at 964; Fed. R. Civ. P. 72(a). Moreover, this Court finds that the magistrate judge's finding that Plaintiffs failed to make a "colorable claim" is not "clearly erroneous." See id.

Plaintiffs' evidence falls far short of showing minimum contacts. With regard to specific jurisdiction, Plaintiffs failed to satisfy any of the three prongs of the tripartite test. See United Elec., 960 F.2d at 1089. Plaintiffs' relatedness showing was unconvincing. There was no evidence - besides the general contractual relationship between Plaintiff Sagar and Defendant - that Plaintiffs' claims arose out of or are directly related to Defendant's contacts with Rhode Island. See Sawtelle, 70 F.3d at 1389. Neither did Plaintiffs show purposeful availment. With regard to general jurisdiction, Defendant's contacts were infrequent and isolated and thus were not enough to satisfy the continuous and systematic contacts required for general jurisdiction. See Noonan, 135 F.3d at 92-94.

Given Defendant's lack of connection to the state of Rhode Island, the discovery sought by Plaintiffs is unlikely to reveal the contacts necessary for personal jurisdiction. Having determined that the magistrate judge's decision was not clearly erroneous or contrary to law, this Court denies the request for jurisdictional discovery.

## IV. Conclusion

For all the reasons set forth herein, Plaintiffs' motion for jurisdictional discovery is DENIED and Defendant's motion to dismiss is GRANTED.

SO ORDERED

Mary M. Lisi
Mary M. Lisi
United States District Judge
August 20, 2008